Nicholson, C. J.,
delivered the opinion of the Court.
On the 28th of July, 1865, John Haynes conveyed to W. D. Haynes a tract of land of five *477 hundred and fifteen acres, for the consideration of four thousand dollars in hand paid. On the 17th of December, 1865, 'W. D. Haynes conveyed to James M. Oliver and Susan ~W. Johnson three hundred and fifty-eight acres of the said tract of five hundred and fifteen acres, for the consideration of three thousand two hundred and twenty-two dollars in hand paid.
Complainant, being a judgment creditor of John Haynes to the amount of five thousand two hundred and twenty-five dollars, filed his bill in the Chancery Court at Huntingdon, to have the said conveyances set aside for fraud. Upon the hearing, the Chancellor held that the conveyances were fraudulent, and that the same be set aside, and the land be decreed to be sold to satisfy complainant’s judgment.
Prom this decree defendants have appealed.
The only question presented for our determination is one of fact. Does the proof establish the allegation of fraud? As .the answers are not under oath, they cannot be looked to as evidence.
Ho controversy is made as to the judgment of complainant, nor as to the conveyances having been made at the time, and for the consideration expressed; nor as to the relationship existing among the defendants — nor as to the insolvency of defendant, John Haynes, when he made the conveyance to ~W. D. Haynes. John Haynes was the father of W. D. Haynes, and James M. Oliver was his son-in-law, and Susan "W". Johnson was his *478 daughter. It is shown that the defendants all reside together on the land in dispute, from which fact, and their relationship, we can have no hesitancy in inferring, that the embarrassed condition of John Haynes was known to his son-in-law and daughter.
It is shown, that at the close of the war, W. D. Haynes was a man of limited means, though an. industrious and economical man. That he did not have means sufficient to pay for the land, is fully made out. The same is shown as to the limited means of Oliver and Susan Johnson.
But it is proved by the father-in-law of W. D. Haynes, Tim Barham, that about the time of the conveyance, his son-in-law came to him, accompanied by John Haynes, and said he had concluded to buy the land from his father, if witness would help him to the amount of one thousand dollars. Witness consented, and handed the money to John Haynes. It is also proved by another witness, J. R. Croswell, that soon afterwards, John Haynes and W. D." Haynes called on him, to witness the payment, by the latter to the former, of between nine hundred and one thousand dollars. The reason they gave for wanting the payment witnessed, was that no note had been given for the money, because they had no stamps. This witness wrote the deed, .bearing date July 28th, 1865, but it was not acknowledged for registration until the 18th of August, 1865, the delay' being occasioned for want of stamps. A few days previous to the time of *479 being called in to witness tbe payment of nine hundred or one thousand dollars, witness proved he had been called on to witness an acknowledgment by John Haynes, that ~W. I). Haynes had a short time before paid him one thousand dollars on the land. The parties said the reason there was no receipt taken for the money paid was, that they had no stamps, and it was against the law to execute such writings without stamps.
There is no evidence as to any other payment, nor is there any proof as to whether notes were executed for the balance. The bill had alleged that the consideration of four thousand dollars, recited in the deed, was not paid. The answer stated that it was paid, but not being sworn to, it only made an issue, and it devolved on defendants to sustain the answer, by satisfactory proof, after complainant had proved that defendant, W. D. Haynes, had not sufficient means to make the payment, and had thereby raised a presumption against the payment: 6 Yer., 159; 5 Sneed, 534; 1 Hum., 335; 2 Head, 628.
Ho effort is made to prove any more than the one thousand nine hundred, or two thousand dollars, and the genuineness of these payments is not free from suspicion. The circumstances attending- the alleged payments excite a strong suspicion that the money of which Croswell was called on to witness the payment, was the same which "W. H. Haynes’ father-in-law had handed to John Haynes.
If these payments were genuine, and if the bal- *480 anee of the purchase money was really paid, it was within the power of the parties to make direct and conclusive proof.
John Haynes and W. D. Haynes were both competent witnesses, and could have made the proof in support of their answer. Their failure to' do so is unaccountable, upon any other reasonable hypothesis, than that the payment had not been made. Instead of coming forward as witnesses, as the law authorized them to do, and proving that the transaction was all fair and honest, and that the consideration was fully paid, they are content to rest their case upon the proof of Croswell and Barham, all of which may be true, and still the payment is left in doubt and uncertainty..
But by way of showing that the money was paid, as stated in the answer, and the purpose for which John Haynes sold his land, it is said that he. was indebted to the legatees of his father in the sum of several thousand dollars, as executor of said estate, and that he sold his land to raise money to pay off that indebtedness. And to sustain this explanation of the transaction, several of the legatees are examined to prove that he had settled with them, and paid them up their shares. This evidence would have been of much weight if it had shown that these settlements and payments were made soon after the sale of his land. But the proof is, that the land was sold, and the two thousand dollars received in July, 1865, whereas *481 the settlements with, the legatees were not made until some time in 1867 or 1868.
The hill alleges that four thousand dollars was not a full and adequate price for the land. The proof sustains this allegation. It is in proof that shortly before the sale to his son, he had offered the land for five thousand dollars. But taking all the proof on the subject, we are satisfied the land was reasonably worth from five thousand to six thousand dollars.
Without examining the evidence further, or alluding to, or commenting upon, the relationship between the ‘ parties, and the fact that there was no actual change of the possession of the house, although W. D. Haynes seems to have had control of the place, as he had formerly had when he acted as overseer, and without commenting on the significant and suspicious fact, that in a short time after the conveyance to W. L>. Haynes, he conveys two-thirds of the land jointly to his brother-in-law, Oliver, and his sister Susan, and that they have failed to make satisfactory proof of their having paid for the land; we are constrained to come to the same conclusion with the Chancellor, and to affirm his decree with costs.